Adam R. Fox (State Bar No. 220584)
Adam.Fox@squirepb.com
Emily L. Wallerstein (State Bar No. 260729)
Emily.Wallerstein@squirepb.com
Marisol C. Mork (State Bar No. 265170)
Marisol.Mork@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, CA 90071
Telephone: 1 213 624 2500
Facsimile: 1 213 623 4581

David S. Elkins (State Bar No. 148077)
David.Elkins@squirepb.com
Joseph P. Grasser (State Bar No. 255156)
Joseph.Grasser@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, CA 94304
Telephone: 1 650 856 6500
Facsimile: 1 650 843 8777

Attorneys for Defendants and Counterclaimants
ZIPPMARK, INC. and ZIPPO
MANUFACTURING COMPANY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOEC, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ZIPPMARK, INC., a Delaware corporation; and ZIPPO MANUFACTURING COMPANY, a Pennsylvania corporation,<br><br>Defendants.<br><br>And Related Counterclaims. | Case No. 2:14-CV-02596 RGK (FFMx)<br><br>**DEFENDANTS AND COUNTERCLAIMANTS ZIPPMARK, INC.'S AND ZIPPO MANUFACTURING COMPANY'S OPPOSITION TO PLAINTIFF AND COUNTERDEFENDANTS LOEC, INC. AND LORILLARD TECHNOLOGIES, INC.'S MOTION IN LIMINE NO. 1 TO EXCLUDE EVIDENCE OR ARGUMENT RELATING TO THE SURVEY AND OPINIONS OF MR. HAL PORET**<br><br>[Omnibus Elkins Declaration filed and (Proposed) Order lodged concurrently herewith]<br><br>**Date: April 21, 2015**<br>**Time: 9:00 a.m.**<br>**Place: Courtroom 850**<br>**The Honorable R. Gary Klausner** |

## I.  INTRODUCTION

Hal Poret's survey will assist the trier of fact in this trademark infringement case because it examines the likelihood of confusion between Zippo's[1] BLU trademark and Lorillard's[2] "BLU" branding its electronic cigarettes ("ecigs"). Mr. Poret's survey results demonstrate "a statistically meaningful" measurement of net confusion when the results of the test group are compared to a control group. Omnibus Declaration of David Elkins in Support of Zippo's Oppositions to Motions In Limine ("Elkins Decl."), Ex. 1 at 191:7-192:8. No doubt concerned by these results, Lorillard hired Dr. Stephen Nowlis to review and critique Mr. Poret's expert report. But Dr. Nowlis did not conduct his own survey in an effort to disprove and discredit Mr. Poret's results. *Id.*, Ex. 4 at 31:13-15. Dr. Nowlis failed to take this step even though he has—in another case—"essentially replicated Mr. Poret's study, with the exception that it rectified . . . alleged errors" precisely for that purpose. *Meyer Manufacturing Co. v. Telebrands Corp.*, No. 2:11-cv-03153-TLN-DAD, 2013 U.S. Dist. LEXIS 87200, at *8 (E.D. Cal. Jun. 20, 2013).

Without affirmative proof of its own to present the jury to consider, Lorillard now seeks to deprive the jury from considering any survey evidence at all. Tellingly, Lorillard does not challenge Mr. Poret's ample qualifications as a professional survey expert. Instead, Lorillard seeks to bar the jury from having the opportunity to consider Mr. Poret's survey—and Dr. Nowlis's critique—by branding it "unreliable." But their specific criticisms only go to the weight the jury should accord Mr. Poret's survey. The Court should accordingly deny this motion.

---

[1] This opposition refers collectively to Defendants and Counterclaimants Zippo Manufacturing Company ("ZMC") and ZippMark, Inc. ("ZippMark") as "Zippo."

[2] This opposition refers collectively to Plaintiffs and Counterclaim-Defendants LOEC, Inc. ("LOEC") and Lorillard Technologies, Inc. ("LTI") as "Lorillard."

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

## II.   ARGUMENT

### A.   RELEVANT LEGAL STANDARDS

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony.  In the seminal case, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the Supreme Court held that Rule 702 requires district courts to serve as "gatekeepers" to ensure "any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Id.* at 589.  This "gatekeeping" obligation applies to all expert testimony.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  To be relevant, proffered expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue."  *Daubert*, 509 U.S. at 591.  To be reliable, the "[p]roposed testimony must be supported by appropriate validation, *i.e.*, 'good grounds,' based on what is known."  *Id.* at 590.  Various factors may illuminate whether an expert opinion is reliable.  *Id.* at 593-94.

Despite the complexity characterizing the subjects about which many experts testify, the Ninth Circuit has instructed district courts to follow some simple rules in executing their gatekeeper obligations.  "Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable.  The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury."  *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 709 F.3d 872, 883 (9th Cir. 2013).  In short, "the judge is 'a gatekeeper, not a fact finder.'"  *Id.* (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)).

In the specific context of survey experts in trademark infringement lawsuits, "[t]he usual rule is that ***a professionally conducted survey that relates to the facts in issue will be admitted into evidence***, with any deficiencies or shortcomings serving to reduce the weight the survey is given."  McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:158 (4th ed. 2014) ("McCarthy") (emphasis added).  The Ninth Circuit embraces this rule: "Once the survey is

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

admitted, . . . follow-on issues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like ***go to the weight of the survey rather than its admissibility***." *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001) (emphasis added).

### B. THE RATE OF CONFUSION DEMONSTRATED BY THE PORET SURVEY IS MORE THAN SUFFICIENT TO PERMIT A JURY TO CONSIDER IT AS EVIDENCE OF MEANINGFUL CONSUMER CONFUSION

Lorillard makes much of the fact that Mr. Poret's level of confusion among his survey participants is 10% and cites some cases in which such a rate of confusion has factored against finding a likelihood of confusion. Motion at 8. Although Lorillard is free to argue to the jury that Mr. Poret's survey results are unpersuasive evidence of actual confusion, no legal rule fixes a threshold below which survey results must be excluded. This is why numerous published cases deem significant survey findings of confusion around—and even below—10 percent. *See e.g.*, *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 594 & n.13 (3d Cir. 2002) (explaining that "a 7.5% figure could sustain a finding of substantial consumer confusion") (citing *Coca-Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 317 (2d Cir. 1982)); *Mutual of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 400 (8th Cir. 1987) (holding a survey showing "approximately ten percent" entitled to "substantial weight unless seriously flawed"); *Goya Foods, Inc. v. Condal Distribs., Inc.*, 732 F. Supp. 453, 457 n.7 (S.D.N.Y. 1990) (deeming 9-10% confusion rate sufficient to demonstrate "meaningful evidence of actual confusion"); *Jockey Intern'l, Inc. v. Burkard*, 185 U.S.P.Q. (BNA) 201, 205 (S.D. Cal. 1975) (11.4% sufficient); *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 365 F. Supp. 707, 716 (S.D.N.Y. 1973) (calling 7.7% perception of business connection and 8.5% confusion about two company names "strong evidence"), *aff'd*, 523 F.2d 1331 (2d Cir. 1975).

Indeed, even in making its exclusion argument, Lorillard acknowledges that "when the percent of survey respondents reporting confusion dips below 10%, the

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

Ninth Circuit has found that '[t]his percentage *weighs against* a finding of confusion." Motion at 9 (quoting *Diana Princess of Wales Mem'l Fund v. Franklin Mint Co.*, 1999 U.S. App. Lexis 34568, *7-8 (9th Cir. Dec. 30, 1999) (emphasis added). Whatever its precedential value,[3] it does not remotely support the conclusion that survey evidence should be excluded simply because its results do not cross a specific threshold. Quite to the contrary, Lorillard's arguments that the results of Mr. Poret's survey are too small to support a finding of actual confusion "go to the weight of the survey rather than its admissibility." *Clicks Billiards, Inc.*, 251 F.3d at 1263.

It bears noting that Lorillard's exclusion argument fails to account for Mr. Poret's survey having used a control group to calculate a net confusion rate that eliminates "noise." This is a critical omission, particularly because "[e]xplicit attention to the value of control groups in trademark and deceptive advertising litigation is a relatively recent phenomenon." Diamond, Shari Seidman, "Reference Guide of Survey Research, *Reference Manual on Scientific Evidence*, (National Academic Press Third Ed. 2011).[4] Thus, whatever might be said in the case law about surveys in which no controls were used to calculate net confusion, "[i]n the modern era, with the advent of the application of scientific survey designs in which a control cell is used to asses net confusion, it is difficult to predict how courts may view net likelihood of confusion survey results under 10 percent when a vigorous or robust control reveals a significantly lower level of confusion." Ford, Gerald L,

---

[3] Lorillard's reliance on this case, despite its unpublished status and the Ninth Circuit rules limiting citation to such authorities, is dubious at best.

[4] A copy of this chapter is attached as Exhibit 2 to the Omnibus Declaration of David Elkins in Support of Zippo's Oppositions to Motions *In Limine*, and it was relied upon by Lorillard's expert, Dr. Nowlis. Esmail Decl., Ex. B at 4 n. 2.

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

"Survey Percentages in Lanham Act Matters," *Trademark and Deceptive Advertising Surveys: Law, Science, and Design* (2012).[5]

As Mr. Poret explained, noise "in this instance . . . mean[s responding with confusion] for any reason other than the use of the term 'blu' on both products." Elkins Decl., Ex. 1 at 129:18-21.  By using a control, Mr. Poret was able to reduce the "noise" to zero, i.e., ensure that the net confusion he measured was a result of the use of "blu" on Lorillard's products, as opposed to other reasons.  This strength in Mr. Poret's survey design is critical in light of the fact that, as discussed above, historically, such controls were not used and resulted in rates of confusion about which the "noise" was uncertain and unknowable.  Thus, the historic case law expressing concerns about the weight that should be accorded to a 10% rate of confusion in which no control group served to contextualize that finding are distinct from the more rigorous and robust survey that Mr. Poret designed and implemented in this case.

### C. MR. PORET'S SURVEY IS RELEVANT TO WHETHER THERE IS A LIKELIHOOD OF CONFUSION

Mr. Poret has opined that his survey results support the notion that potential customers "will mistakenly believe that the Zippo product comes from or is otherwise affiliated with or approved by the company that puts out Lorillard's 'Blu' electronic cigarettes." Esmail Decl., Ex. A at 16.  This is entirely consistent with the types of confusion the Lanham Act sets forth as actionable.  15 U.S.C. § 1125(b) (mandating liability for all those who use in commerce a logo that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin,

---

[5] A copy of this chapter is attached as Exhibit 3 to the Omnibus Declaration of David Elkins in Support of Zippo's Oppositions to Motions *In Limine*, and it was relied upon by Lorillard's expert, Dr. Nowlis.  Esmail Decl., Ex. B at 4 n. 2.

sponsorship, or approval of his or her goods, services, or commercial activities by another person").

Notwithstanding the Lanham Act's clear statutory language, Lorillard contends that the referenced opinion of Mr. Poret's is irrelevant to the issue of likelihood of confusion in a "reverse confusion" case. Claims for reverse confusion, like Zippo's, seek to protect the senior user from losing control over its product's identity in "the rising tide of publicity associated with the junior mark." *Dreamwerks Prod. Group Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). Thus, the inquiry in such cases is simply "whether consumers doing business with the senior user might mistakenly believe that they are dealing with the junior user." *Id.* at 1130. In that case, specifically, the question was "whether a reasonable consumer attending a Dreamwerks-sponsored convention might do so believing that it is a convention sponsored by DreamWorks." *Id.*

In short, "[t]here is no legal distinction under the [Lanham] Act between 'reverse confusion' and other types of confusion." 5-5 *Gilson on Trademarks* § 5.14 (2014). As the First Circuit has explained, "'[r]everse confusion' is not a separate legal claim requiring separate pleading. Rather, it is a descriptive term referring to certain circumstances that can give rise to a likelihood of confusion in a trademark infringement suit." *Dorpan, S.L. v. Hotel Meliá, Inc.*, 728 F.3d 55, 65 n.12 (1st Cir. 2013); *see also, e.g.,* Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792, 806-807 (9th Cir. 2003) ("Generally, to assess whether a defendant has infringed on a plaintiff's trademark, we apply a 'likelihood of confusion' test that asks whether use of the plaintiff's trade-mark by the defendant is 'likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association' of the two products.").

Lorillard ignores these governing authorities to advance its argument based upon a solitary district court opinion that rejected a unique and particularly vague, "*somehow* associated with" test proposed by the plaintiff. Motion at 12 (citing

*Walter v. Mattel, Inc.*, 31 F. Supp. 2d 751, 757 (C.D. Cal. 1998) (emphasis added)). The court announced this result—acknowledging that "the Lanham Act does speak of confusion with respect to 'affiliation, connection, or association'"—because Plaintiff's "argument has no logical stopping point." *Id.* at 757 & 760. The court elaborated by noting the plaintiff's proposal was based upon an argument that "the conceptual nature of her goods and services are related to the conceptual nature of Mattel's goods." *Id.* at 759. Against this backdrop, the court explained that it "cannot conceive of any goods or services that are marketed or advertised through anything other than themes or concepts." *Id.* at 760. It further noted:

> Plaintiff's proposed test for relatedness would seem to allow any commercial artist or illustrator to claim their services were somehow 'related' to any products upon which such commercial art or illustrations appear. Plaintiff's argument distorts the test for relatedness beyond all reasonable bounds, and will not be adopted by this Court.

*Id.*

Mr. Poret has in this case followed the law as set forth in the Lanham Act, not advocated for some novel basis for confusion that lacks all reasonable bounds. Indeed, Mr. Poret's survey, and his opinions based upon its results provide relevant evidence as to whether a consumer purchasing a Zippo BLU lighter may believe it is "dealing with" the same company making the blu ecig. *Dreamwerks Prod. Group Inc.*, 142 F.3d at 1130. The survey results show that a significant number of respondents thought that the Zippo BLU product was "from the same company that make, or is otherwise affiliated or approved by, Blu e-cigarettes." Esmail Decl., Ex. A at 16. This evidence is relevant and appropriate under the Lanham Act.

### D. MR. PORET SURVEYED THE PROPER UNIVERSE

The parties agree that the proper universe to survey is the senior user's customer base, i.e., potential consumers of Zippo's BLU lighter. *See*, *e.g.*, *Dreamwerks Prod. Group Inc.*, 142 F.3d at 1130. Lorillard contends that Mr. Poret failed to properly survey that universe for two equally incorrect reasons.

First, Lorillard contends that Mr. Poret erred in including "consumers who purported to pay at least $20 for a lighter." Motion at 15. Lorillard claims that this is error because two documents indicate that Zippo wished to charge $40 to $50 for its lighter. *Id.* (citing Esmail Decl. Exs. C at ZIPPO0001369 and Ex. D at ZIPPO0019885.) But Mr. Poret explained that a more thorough investigation discloses that "Zippo BLU lighters sold between 20 and probably 70 or 80 dollars at various sources." Elkins Decl., Ex. 1 at 57:25-58:22. In short, Mr. Poret qualified for his survey consumers "who are currently in the market for a lighter[,]" which is the proper universe of consumers. *Id.* at 61:18-62:9. Moreover, Lorillard's theoretical criticism is unsupported by the empirical data gathered by the survey, which demonstrates that the rate of confusion is "actually slightly higher for people who spend $40 or more." *Id.* at185:4-24. "[H]ad the survey been only people who spend $40 or more, the results would have been the same if not slightly higher." *Id.*

Second, Lorillard contends that Mr. Poret should have surveyed only men between the ages of 18 and 44 because that is "target" market. Motion at 15-16. This argument is a red herring. As Mr. Poret explained, "there is a big difference between what a company considers its target and what the actual relevant universe is . . . the target is not the proper definition of the relevant universe." Elkins Decl., Ex. 1 at 60:22-61:17. In other words, Mr. Poret considers a company's target market, but also "make[s] a distinction between what companies consider their target market and what is the proper definition of a relevant universe." *Id.* at 65:1-66:6 (noting that the company target audience "is very rarely a fair definition of the

universe" for a survey). Rather than rely on just a few internal documents expressing Zippo's aspirational "target" market, Mr. Poret identified the appropriate universe of actual, potential consumers. *E.g.*, *id.* at 66:23-67:4; *see also* Esmail Decl., Ex. A at 17-21. These questions were designed to achieve Mr. Poret's "goal . . . to get people who are currently in the market for a lighter." Elkins Decl., Ex. 1 at 61:19-62:9.

### E. LORILLARD'S OTHER CRITIQUES OF MR. PORET'S SURVEY AMOUNT TO NOTHING MORE THAN A BATTLE OF EXPERTS FOR THE JURY TO CONSIDER

The remaining criticisms of Mr. Poret's survey, while couched as dramatic deviations from "acceptable principles," do not go to admissibility as a legal matter; they are nothing more than arguments for the jury to consider as it weighs the evidence. For example, Lorillard accuses Mr. Poret of misrepresenting and mischaracterizing survey responses. *See* Motion at 13-14. Ruling on this aspect of the Motion would require the Court to make a factual finding, which is improper at this point. *E.g.*, *Alaska Rent-A-Car, Inc.*, 709 F.3d at 883 ("[T]he judge is a gatekeeper, not a fact finder.") (footnote and quotation marks omitted).

Likewise, relying on Lorillard's own expert witness, Lorillard criticizes Mr. Poret's survey's design for purportedly not replicating marketplace conditions, choice of control group and his failure to rotate responses. Motion at 16-18. But the law teaches that "issues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility." *Clicks Billiards, Inc.*, 251 F.3d at 1263. Moreover, as evidenced by Lorillard's reliance, almost exclusively, on its own expert report to justify these design criticisms presents a classic "battle of the experts" that must be decided by the jury. *Humetrix, Inc. v. Gemplus S.C.A.*, 268 F.3d 910, 919 (9th Cir. 2001) ("Authority to determine the victor in such a 'battle of expert witnesses' is properly reposed in the jury").

SQUIRE PATTON BOGGS (US) LLP
600 Hansen Way
Palo Alto, California 94304

- 9 -

ZIPPO'S OPPOSITION TO LORILLARD'S
MOTION *IN LIMINE* NO. 1
CASE NO. 2:14-CV-02596 RGK (FFMX)

These criticisms are also not well founded. For example, while Lorillard claims that Mr. Poret mischaracterized responses, a review of the highlighted responses reveals that each respondent identified was confused into believing that the Zippo BLU product was affiliated with an ecig maker. Motion at 13-14. Likewise, at his deposition, Mr. Poret explained that he designed his survey to "let consumers be exposed to the mark at issue in a way that is reasonably realistic to how they would in the real world, but with the understanding that in the real world there are a variety of ways that people encounter things." Elkins Decl., Ex. 1 at 76:14-77:16. Moreover, Dr. Nowlis could only speculate about how such aspects of Mr. Poret's survey impacted the respondents' answers, if at all. *Id.*, Ex. 4 at 49:18-51:16, 74:21-77:16. Put simply, the alleged failures of Mr. Poret's survey are issues for the jury to decide at trial.

### III. CONCLUSION

For the foregoing reasons, Zippo respectfully requests that the Court deny Lorillard's Motion *in Limine* No. 1.

Dated: March 27, 2015

SQUIRE PATTON BOGGS (US) LLP

By: */s/ David S. Elkins*
David S. Elkins
Adam R. Fox
Joseph P. Grasser
Emily L. Wallerstein
Marisol C. Mork

Attorneys for Defendants and Counterclaimants ZIPPMARK, INC. and ZIPPO MANUFACTURING COMPANY